UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>          Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>          Defendant,<br><br>and<br><br>VALSPAR CORPORATION,<br><br>          Intervenor-Defendant. | Case No.: 09-cv-287 JRT/JJG<br><br><br>**PLAINTIFF CONTINENTAL CASUALTY COMPANY'S RESPONSE TO MOTION OF WESTCHESTER FIRE INSURANCE COMPANY TO INTERVENE** |

Plaintiff, Continental Casualty Company ("Continental") hereby responds to the Motion of Westchester Fire Insurance Company ("Westchester") to intervene. Continental agrees with Westchester that if Valspar is permitted to interject into this litigation now the issue of whether Westchester, a first layer excess insurer, has a duty to drop down and defend, Westchester satisfies the criteria for intervention, whether under Rule 24(a) or (b).

As Westchester notes, Continental sought a ruling regarding the respective rights of Continental and defendant National Union Fire Insurance Company ("National Union") under their respective primary insurance contracts with Valspar. Continental did not seek a declaration regarding the rights or obligations of

Westchester or, indeed, of any other insurer. Docket No. 1, p. 1 and 8 (emphasis added). No party to the litigation sought to add other insurers. No party to the litigation sought affirmative relief against any other insurers. No insurance policy issued by any insurer other than Continental or National Union was proffered into the record.

In its Memorandum Opinion and Order of Judgment on Motions for Summary Judgment (Docket No. 220) ("Memorandum"), the Court held that no excess insurer should be included in the division of defense costs for the four suits. Docket No. 220, p. 54, n. 45. The Court (mistakenly) found, however, that Valspar tendered defense of the four underlying lawsuits to seven primary insurers and one excess insurer (*id.* at 22), that the policies of seven primary insurers were triggered by the allegations of the four underlying lawsuits against Valspar (*id.* at 54), that defense costs should be divided equally among the seven primary insurers (*id.*) and that Continental has a right to recover 1/7 from National Union. *Id.* at 55. The Memorandum does not identify the seven primary insurers although by inference Continental presumes the Court believed Westchester[1] was the seventh such primary.

With the Court's permission, Continental moved to correct the Memorandum to the extent it was based on the mistaken inclusion of Westchester among the *primary* insurers with a duty to defend the four underlying suits and amongst whom

---

[1] Westchester is referred to as "International" in the Memorandum, the parties' pleadings, testimony and summary judgment papers.

the costs of defending the four toxic tort suits against Valspar should be allocated. *See* Docket Nos. 239 and 240.  The Court appears to have mistakenly believed that Westchester issued a primary insurance policy to Valspar or a policy that imposed a duty to defend.  As demonstrated in Continental's memorandum in support of its Motion to Correct (*id.*), there was no evidence in the record to support the finding that the Westchester policy was a primary policy.  Indeed, the only evidence regarding the Westchester Policy was Valspar's characterization of that policy as an "umbrella" policy, expressly distinguishing it from "primary policies" issued by Continental.  *See* Second Aff. of Kristen Quast, ¶4, Docket No. 187 cited by Court at Docket No. 220 at 2-3.

Even though Westchester is not a party to the litigation and should not be bound by the Court's judgment, Valspar's letter (Docket No. 225) and its opposition to Continental's Motion to Correct (Docket No. 242) suggest that Valspar will seek to hold Westchester responsible for an equal share of defense costs along with Valspar's primary insurers.  Thus, Westchester plainly has an interest in ensuring that its rights are protected and not impaired.

Moreover, none of the parties to the litigation can adequately protect Westchester's interests.  As Westchester correctly notes, Continental, National Union and Valspar would have a lesser share (1/7) of defense costs if the Court's Memorandum is not corrected.  Nonetheless, Continental remains of the view that the record evidence compels amendment of the Court's Memorandum to reflect the

correct number of primary insurers amongst whom defense costs should be allocated.

While Continental does not oppose Westchester's motion to intervene, such intervention would be unnecessary if the Court grants Continental's motion to correct the Memorandum as set forth in its Motion and Proposed Order. As demonstrated in Continental's memorandum, the evidence was undisputed that the four suits were tendered under policies issued by *inter alia* six insurers, all of whom indisputably issued primary policies to Valspar.[2] Continental submits that it is unnecessary and inappropriate to open up the summary judgment record to address the obligations, if any, of Westchester. To the extent Defendants sought to mitigate their damages or minimize their share of defense costs, they had the burden of establishing by undisputed evidence that Westchester had a duty to defend. Defendants chose not to offer evidence of the Westchester umbrella policy. In the absence of such evidence, no determination of Westchester's obligations could be made. *See* Docket No. 220 at 29 and 32-33 ("Whether an insurer has a legal obligation to defend the insured necessarily stems from an interpretation of the insurance policy.").

---

[2] Docket No. 220 at 22 citing Compl., Exs. C-J, Feb. 9, 2009, Docket No. 2 (the "tender letters"). There is no dispute that the four suits were tendered under policies issued by the following insurers and that all of these insurers issued *primary* liability insurance to Valspar: (1) Maryland Casualty/Zurich, (2) Employer's Mutual/Wausau, (3) Continental, (4) Liberty Mutual, (5) Fireman's Fund/American and National Union. *See also* Docket 186, at 9 (Valspar's Memo) and Docket No. 220 at 23 (citing to Second Quast Aff., Ex. 43 at 5592) (characterizing insurance issued by National Union as "primary liability insurance").

In the event, however, that the Court decides to expand the litigation to address Valspar's untimely contention[3] that the Westchester umbrella policy obligates it to defend, Continental agrees that Westchester must be allowed to intervene to protect its rights. At the same time, however, Continental is wary of opening up the record to adjudicate issues that Continental submits were not properly before the Court on summary judgment. The Court should be aware that there are other first layer excess policies (on the same layer as the Westchester policy) sitting above exhausted primary insurance policies.[4] Thus, adjudication of the rights and obligations of any first layer excess carrier could lead to an expansion of this litigation.[5]

## CONCLUSION

Continental submits that Westchester's motion to intervene will be rendered moot if the Court corrects its Memorandum and Judgment as sought in Continental's Motion to Correct (Docket No. 239). Nonetheless, Continental does not oppose Westchester's motion to intervene.

---

[3] Despite the extensive briefing on summary judgment, nowhere in the 84 pages of Valspar's briefs does Valspar assert that Westchester (aka International) had a duty to drop down and defend. *See* Docket Nos. 186, 200 and 211.

[4] For example, the tender letters identify excess policies issued by Virginia Surety as well as several excess policies issued by Liberty Mutual. See Docket No. 2, Compl., Exs. C-J, Feb. 9, 2009 at pp. 6, 13, 20 and 27.

[5] Expansion of the litigation to address the obligations, if any, of first layer excess insurers may raise issues regarding exhaustion of primary policies. Westchester contends *inter alia* that its coverage has not been triggered because the primary policy issued by Nationwide Indemnity Company was not properly exhausted. As the Court is aware, Nationwide Indemnity Company, which issued a primary policy to Valspar for the policy period May 1, 1984 to May 1, 1985, submitted a letter to the Court on May 13, 2013 reserving the right to intervene.

        Respectfully submitted,

Dated: May 30, 2013

_[signature]_

Karen Ventrell (*admitted pro hac vice*)
[DC Bar # 466150]
TROUTMAN SANDERS LLP
401 9th Street, NW
Washington, D.C. 20004-2134
(202) 662-2051
Karen.Ventrell@troutmansanders.com
- and –
Jeanne H. Under (#0131404)
BASSFORD REMELE, P.A.
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402-3707
(612) 376-1633
junger@bassford.com

Attorneys for Plaintiff Continental Casualty Company