UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>        Plaintiff,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and THE VALSPAR CORPORATION,<br><br>        Defendants. | Case No.: 09-CV-287 (JRT/JJG)<br><br>**DEFENDANT THE VALSPAR CORPORATION'S RESPONSE TO WESTCHESTER FIRE INSURANCE COMPANY'S MOTION TO INTERVENE** |

**I.   Introduction.**

Westchester Fire Insurance Company's effort to inject new parties and issues into this lawsuit, after four years of litigation, after the Court has issued its summary judgment ruling, and after briefing has been completed on the remaining issues identified by the Court, should be denied.  Continental brought this contribution suit in February 2009 against only one other Valspar insurer – National Union.  The narrow issues that Continental asked this Court to decide were: (a) does National Union have a duty to defend and contribute in the four underlying suits; and (b) if so, what is National Union's contribution share.

Those issues, and this suit, have been pending for four years.  The Court decided those issues as amongst Continental, National Union, and Valspar on the basis of the undisputed designated evidence before the Court, including Continental's repeated corporate admissions that the four underlying suits triggered seven – not six – policy

periods. For purposes of Continental's contribution claim against National Union, the Court determined that there were seven triggered policy periods, and that the National Union period's contribution share was 1/7.[1]

International[2] now seeks to intervene in this suit for the first time, to submit new evidence and inject new claims and legal issues that were and are unnecessary to the determination of the issues that are before the Court. International does not claim that it only recently learned of this suit, or that for the last four years it has been unaware that the number of allocation shares was an issue in this suit. If International is permitted to intervene, the other carrier that issued a policy to Valspar for the 1984-85 policy period, Nationwide, already has announced its intention also to seek to intervene. [Dkt. 238.] Nationwide undoubtedly also will seek to submit new evidence and assert new claims. Such new claims and new evidence will require additional discovery and motion practice, further delaying resolution of this case.

For purposes of intervention under Fed. R. Civ. P. 24, International does not have a direct, substantial interest in the narrow issues that are presented in this suit, and any purported interest has not been impaired. Moreover, International's motion to intervene is both untimely and prejudicial. International is not entitled to intervention as of right or permissive intervention, and its motion should be denied.

---

[1] Valspar respectfully disagrees with the Court's conclusion that the National Union years have a duty to contribute.

[2] Westchester describes itself as "successor by novation to International Insurance Company." [Dkt. 245 at 1.] For purposes of consistency with prior briefing and to avoid confusion, Valspar refers to Westchester as "International."

**II.     International is not entitled to intervention as of right.**

Intervention as of right under Fed. R. Civ. P. 24(a) requires a showing of four elements. First, the party seeking to intervene must show that it has "an interest relating to the property that is the subject of the action." Second, it must show that it "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Third, it must show that no existing party adequately represents that interest. Finally, the motion to intervene must be timely. Fed. R. Civ. P. 24(a); *U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1157 (8th Cir. 1995). International's motion to intervene fails each of these four requirements.

    **A.     International has no "direct, substantial" interest in the narrow subject matter of this suit.**

The Eighth Circuit has held that the requisite "interest" for an intervenor is a "direct, substantial, and legally protectable" interest, as opposed to an interest that is "tangential or collateral." *Id.* at 1161 (quoting *Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 90 (10th Cir. 1993)). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Standard Heating & Air Conditioning, Inc. v. Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998) (quoting *Washington Elec. v. Massachusetts Mun. Wholesale Elec.*, 922 F.2d 92, 97 (2d Cir. 1990)). International has no such "direct, substantial" interest in the issues presented by this suit. Any purported International interests are – at most – remote, contingent, "tangential or collateral."

Continental could have named all of Valspar's insurers for all of the triggered policy periods as defendants in this suit, and could have sought a declaration of defense, and a contribution share, from each of them. For its own reasons, it did not do so. The only claims Continental asserted were claims for defense and a contribution share in four underlying suits against only National Union – a single insurer from just one of the seven triggered policy periods. Accordingly, the only issues that were and are presented to this Court in this suit are: (a) does the National Union period have a duty to defend and contribute in the four underlying suits; and (b) if so, what share does the National Union period contribute.

In this suit, Continental does not seek contribution from International – or from the other carriers that issued policies to Valspar for any of the other triggered periods – for the four underlying suits. There is thus no risk that this Court in this suit will order International to pay a share of defense costs in those four underlying suits. Likewise, there is no evidence that International made any defense payments in the four underlying suits, nor does International claim that it did. Accordingly, International itself has no contribution claim against Continental, National Union, or any other party for the four underlying suits. Finally, International itself contends that it is not a party to this suit, and that it would not be bound by the Court's Order. [Dkt. 247 at 12.] For each of these reasons, International has no "direct, substantial" interest in the subject matter of this litigation.

### B. No purported International "interest" will be impaired by resolution of the issues in this suit.

Even if International had a "direct, substantial" interest in the issues presented in this suit – and it does not – it has not shown how any such interest would be impaired or impeded "as a practical matter." *Union Elec. Co.*, 64 F.3d at 1161 (quoting *Kansas Pub. Employees Retirement Sys.*, 60 F.3d 1304, 1307 (8th Cir. 1995)). Again, in this suit Continental chose to seek contribution from a single policy period (1990-2004) that is different from International's policy period (1984-85). To the extent that International has some "tangential or collateral" interest in other policy periods having a contribution obligation in four underlying suits that International did not defend and made no contribution toward, that "tangential or collateral" interest could only be aided by the resolution of this suit, and in any event, would not be impaired. Again, International itself contends that it will not be bound by the Court's Order. [Dkt. 247 at 12.]

### C. Continental has adequately represented any purported International "interest" in this suit.

To the extent International has any "tangential or collateral" interest in the outcome of this suit at all, that interest has been adequately represented. Continental sought contribution from National Union, and this Court granted Continental's motion for summary judgment against National Union.

International describes Continental's recent effort to have the triggered 1984-85 policy period removed from the contribution allocation as "unselfish[]," but still inadequately representative of International's own interests. [*Id.* at 15.] International does not explain why Continental's representation is inadequate, particularly given that

5

Continental is advocating the *same* position that International would assert. Given that Continental sought contribution from only the National Union period and none of the many other triggered policy periods, Continental has significant self-interest in maximizing its recovery from the only policy period from which it sought contribution, by seeking to minimize the number of other contribution shares by any means possible.

>   D.   **International's motion was untimely, and its intervention would materially prejudice Valspar.**

"The decision as to timeliness is committed to the district court's discretion." *Arkansas Elec. Energy Consumers v. Middle South Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985). "In determining timeliness, three factors that bear particular consideration are the reason for any delay by the proposed intervenor in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Union Elec.*, 64 F.3d at 1159. All three of these factors compel a conclusion that International's effort to intervene in this suit – four years after it was filed and after the Court entered summary judgment – was untimely.

>   1.   **International has not provided any rationale for its delay in intervening, and there is none.**

The Eighth Circuit has held that when a party is aware of a suit, but waits a substantial time to intervene, intervention is not warranted. For example, in *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407 (8th Cir. 1995), the intervenor was aware of, and had monitored, the suit for nearly two years before seeking to intervene. *Id.* at 409. This was a key factor in the Eighth Circuit affirming the district court's denial of the motion to

6

intervene. *Id.; see also American Civil Liberties Union v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011) (intervenor's failure to provide adequate explanation for fourteen-month delay in intervening was a factor in the Eighth Circuit affirming the denial of intervention).[3]

International claims it is intervening now because the Court has to decide the number of contribution shares. [Dkt. 247 at 8.] It further claims that its "need" for intervention did not arise until May 20, 2013, when Valspar objected to Continental's post-summary judgment effort to increase National Union's contribution share from 1/7 to 1/6. [*Id.* at 13.] International is incorrect. The "number of shares" issue has been in this suit since the outset. It was inherent in the claims asserted in Continental's Complaint: Continental sought to recover only a "share" of defense costs from National Union. [Dkt. 1 at ¶¶ 1, 8, 27, 48.] This issue also was briefed both in the original summary judgment briefing in 2010, [*see* Dkt. 34 at 12; Dkt. 80 at 28-29; Dkt. 84 at 30-32; Dkt. 125 at 10-12], and in the later summary judgment briefing in 2012, [*see* Dkt. 186 at 32-33; Dkt. 192 at 28; Dkt. 200 at 36; Dkt. 214 at 9].

The evidence before the Court on the motion for summary judgment thus was undisputed (because of the uncontroverted admissions by Continental's corporate representative) that, as to Continental's contribution claim against National Union, seven

---

[3] Similarly, the intervenor in *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993), as International does here, attempted to rely on a recent filing as the first time it allegedly could have become aware that it had an interest in the resolution of an issue in the suit. However, the court in that suit observed that previous filings contained references "at least as obvious as that in the March 1992 motion" to the issue in which the intervenor claimed an interest. Accordingly, the intervenor's "proffered explanation for their delay is . . . not very persuasive." *Id.* at 999.

7

policy periods were triggered, and that Continental had sought, and would seek, contribution from the other six triggered periods besides its own. [*See id.*] As far back as the 2010 summary judgment briefing, Valspar specifically argued, on the basis of these Continental admissions that, if the National Union policy period were found to have an obligation to contribute, its share would be 1/7 instead of 1/6 or 1/2. [Dkt. 125 at 10-12.] International has known about this issue for years, and did not just discover it for the first time only eleven days ago.[4]

### 2. The litigation has progressed almost to its conclusion in this Court, further warranting denial of International's motion.

As noted above, Continental filed this suit in February 2009 – more than four years ago. In the intervening four years, the parties conducted written discovery, took depositions, engaged in discovery motion practice, fully briefed and argued a motion for summary judgment in 2010, and fully briefed and argued two motions for summary judgment in 2012. The Court has ruled on those motions for summary judgment. The only issues left to be decided by this Court are: (a) whether the Court should reconsider the contribution share it allocated to the National Union policy period under its summary

---

[4] Continental's response to International's motion to intervene – which was nothing more than Continental's latest attempt to get the last word on its motion to correct – likewise contends that Valspar has injected the International drop-down issue into this suit. [Dkt. 254 at 5.] Continental is wrong. The extensive summary judgment record included Continental's admissions that seven – not six – policy periods were triggered by the allegations of the four underlying suits, and that Continental had sought, and would seek, contribution from all six of the other triggered periods (besides its own). Continental did not submit any contrary evidence. With these undisputed admissions, there was no need for Valspar to make any further factual designation on these issues. As among Continental, Valspar, and National Union, for purposes of Continental's claim against National Union, it was undisputed that seven policy periods were triggered for defense purposes and should be included in the contribution allocation. Valspar is not seeking to inject the International drop-down issue into this suit; the Court had a summary judgment record that fully supported seven triggered policy periods with a duty to defend and contribute, and no contrary evidence. The Court made its ruling based upon that undisputed record.

judgment ruling; and (b) how much in defense costs are to be allocated to the National Union policy period.

Courts in the Eighth Circuit deny motions to intervene when suits have progressed as far as this one. *E.g., Arrow*, 55 F.3d at 409 (affirming denial of motion to intervene where intervention was sought two years into the case, following a proposed settlement on the eve of trial); *Arkansas Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985) (affirming denial of motion to intervene a mere twelve days after complaint filed, where restraining order was already issued and "a substantial amount of the litigation had been completed during these twelve days"). For this reason as well, the Motion should be denied.

### 3. The delay caused by International's intervention would unfairly prejudice Valspar.

Valspar will be seriously prejudiced if International is allowed to intervene at this point in the suit to inject new claims, issues, and evidence. As noted above, the parties and Court have made their way through written discovery and depositions, numerous discovery motions, and two waves of summary judgment motions over the last four years. Continental put the number of shares and the size of any National Union contribution share at issue; its corporate representative made admissions as to these issues; and Valspar designated evidence and presented argument on summary judgment based on those admissions. The Court decided the summary judgment motions based on the evidentiary record before it. A final, appealable judgment on the issues raised in

9

Continental's complaint is now imminent, pending the Court's resolution of two remaining collateral issues that already have been fully briefed.

International now seeks to inject various new claims and issues for the first time.[5] International contends that a determination of these new issues will require "a complete factual and legal record," and that none of the existing parties are "in a position to submit the evidence, and make the legal arguments, necessary to develop a complete record . . . ." [Dkt. 247 at 9, 15.] However, discovery has long since closed. If these new claims and issues are allowed to be injected into this lawsuit, and new evidence is to be submitted, Valspar has a fundamental right to have a fair opportunity to oppose International's evidence by conducting discovery concerning the new claims asserted and the new evidence International (and presumably Nationwide) submit.

Developing "a complete record" on these new claims and issues, however, would require substantial delay while the parties undertake both written discovery and depositions, non-dispositive and dispositive motion practice, and potentially a trial on an entirely new set of facts and legal arguments.

Moreover, International is not the only party that has expressed an intent to intervene. Nationwide also has expressed its intent to seek to intervene if International's motion is granted. Nationwide has stated it will seek to litigate issues such as whether its

---

[5] In fact, the proposed Answer that International filed with its motion to intervene seeks to inject other new claims and issues beyond Nationwide exhaustion, International drop-down, and International's obligations to Valspar: It includes, for example, additional claims relating to whether the International policies insure against "the same risk" as the Continental policies; whether the plaintiffs in the underlying suits suffered actual injury during the International policy period; and whether the underlying suits were settled "in reasonable anticipation of liability for a covered claim." [Dkt. 249 at 17-18.]

10

policy is exhausted, and what its obligations to Valspar are.  [Dkt. 238.]  Nationwide's presence in this suit in addition to International's, and in addition to the three existing parties to this suit, would add additional layers of delay, expense, and complexity to all of the discovery that would need to be conducted, and to the cross-motions that would result from injection of these new factual and legal claims and issues.[6]

Again, if International had wanted to obtain a ruling on its own duties to defend and contribute in the four underlying suits, it could have done so long ago.  Valspar will be unfairly prejudiced if International is allowed to intervene and submit new evidence and claims, because discovery has closed.  If International is allowed to do so, Valspar would then have to conduct additional discovery and motion practice, and await Court rulings on International's new factual and legal issues, before it can obtain a final, appealable judgment on the claims and issues that have been litigated for the past four years.  *See, e.g., Tarek ibn Ziyad*, 643 F.3d at 1094 (prejudice where new legal theory would be introduced, and where parties already had engaged in discovery and extensive motion practice); *Arrow*, 55 F.3d at 409 (proposed intervention "subjected the existing parties to the added expense of reopening settlement negotiations and preparing for trial").  *Accord U.S. v. Metropolitan St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) (not only would allowing intervention "produce no gains in judicial efficiency, it would most likely complicate and delay the proceedings with peripheral issues").  The

---

[6] Indeed, if International and Nationwide are permitted to intervene to litigate new factual and legal issues associated with their own defense and contribution obligations, there would be nothing preventing any or all of the carriers in the remaining four triggered periods – Maryland Casualty, Wausau, Fireman's Fund, Liberty Mutual, and/or Virginia Surety – from also seeking to intervene to raise any issues unique to their own policy periods and their own obligations to Valspar.

11

additional delay and expense that International seeks to impose on Valspar is exactly the type of prejudice to the existing parties that courts in the Eighth Circuit rely upon to deny intervention.

### III. International is not entitled to permissive intervention.

Finally, International seeks, in the alternative, to intervene under Fed. R. Civ. P. 24(b), relating to permissive intervention. In deciding whether to grant permissive intervention, courts in the Eighth Circuit consider three factors: "(1) whether the motion to intervene is timely; (2) whether the applicant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights." *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 245 F.R.D. 632, 635 (D. Minn. 2007).

For the reasons set forth above as to intervention as of right, International also is not entitled to permissive intervention. The motion to intervene is untimely, coming more than four years into this suit and after the Court has ruled on the motions for summary judgment. International's claim does not share a question of law or fact in common with the main action – it deals with Nationwide exhaustion, International drop-down, and International's and Nationwide's duties to Valspar, whereas Continental's suit related to whether the National Union period had a duty to defend and contribute, and what share should be allocated to the National Union period, in four underlying suits. Finally, the adjudication of the issues that Continental raised in its complaint four years ago will be unduly delayed, and the parties will be prejudiced, by International injecting

brand new claims and factual issues in this suit – along with all of the written discovery, depositions, and motion practice that that would entail – at the thirteenth hour.

## IV. Conclusion.

International fails to satisfy every requirement for intervention in this suit – either as of right or permissively.  International has no interest in the narrow issues presented in this suit; its effort to intervene in this suit is untimely; and International's intervention would unfairly prejudice the existing parties.  International is not entitled to intervention as of right, nor is it entitled to permissive intervention, and its motion should be denied.

        Respectfully submitted,

**BARNES & THORNBURG LLP**

Dated: May 31, 2013    By:   s/Andrew J. Detherage
    Andrew J. Detherage (IN #15149 49) *admitted pro hac vice*
    John P. Fischer (IN #20120 49) *admitted pro hac vice*
    Barnes & Thornburg LLP
    11 S. Meridian Street
    Indianapolis, IN 46204-3535
    T:  317-236-1313
    Email:   andy.detherage@btlaw.com
              john.fischer@btlaw.com

    Annamarie A. Daley (MN #158112)
    Marta M. Chou (MN #0332112)
    225 South Sixth Street, Suite 2800
    Minneapolis, MN 55402
    T:  612-333-2111
    Email:   annamarie.daley@btlaw.com
              marta.chou@btlaw.com

**Counsel for Defendant The Valspar Corporation**

INDS02 1272938v1