## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, | Civil No. 09-287 (JRT/JJG) |
| Plaintiff, | |
| v. | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | |
| Defendant, | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| and | |
| THE VALSPAR CORPORATION, | |
| Intervenor-Defendant, | |
| and | |
| WESTCHESTER FIRE INSURANCE COMPANY, | |
| Movant | |

Karen H. Ventrell, **TROUTMAN SANDERS LLP**, 401 Ninth Street NW, Washington, DC   20004; and Jeanne H. Unger and Susan E. Gustad, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN  55402, for plaintiff.

Dale O. Thornsjo and Mark R. Azman, **O'MEARA LEER WAGNER & KOHL, PA**, 7401 Metro Boulevard, Suite 600, Minneapolis, MN  55439, for defendant.

Andrew J. Detherage and John P. Fischer, **BARNES & THORNBURG LLP**, 11 South Meridian Street, Suite 1313, Indianapolis, IN  46204; and Annamarie A. Daley and Marta M. Chou, **BARNES & THORNBURG LLP**, 225 South Sixth Street, Suite 2800, Minneapolis, MN  55402, for intervenor-defendant.

James F. Martin, **COHN BAUGHMAN & MARTIN**, 333 West Wacker Drive, Suite 900, Chicago, IL   60606; and Nicholas J. O'Connell and

C. Todd Koebele, **MURNANE BRANDT, PA**, 30 East Seventh Street, Suite 3200, St. Paul, MN 55101, for movant.

This is a declaratory judgment action brought by plaintiff Continental Casualty Company ("Continental") against defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). Continental sought contribution from National Union for costs Continental incurred in defending the Valspar Corporation ("Valspar") against four underlying toxic tort lawsuits. On March 29, 2013, the Court granted in part Continental's motion for summary judgment, finding that National Union had a duty to contribute to defense costs incurred by Continental. (Order, Mar. 29, 2013, Docket No. 220.) Continental now brings a motion asking the Court to reconsider the amount of contribution to which it is entitled. Because Continental has not presented newly discovered evidence or identified manifest errors of law or fact in the Court's March 2013 order, the Court will deny Continental's motion for reconsideration.

## BACKGROUND

### I.   CASE HISTORY

Continental provided commercial general liability insurance coverage to Valspar between January 1, 1971, and January 1, 1976. (Compl. ¶ 9, Feb. 9, 2009, Docket No. 1.) From 1990 through 2004 Valspar and National Union entered into annual agreements which together formed an insurance program (the "Program"). The underlying toxic tort lawsuits at issue in this matter alleged harm caused by long term exposure to Valspar's

products and triggered coverage years of Continental, National Union, and other insurance companies that provided insurance to Valspar between 1976 and 1990.

After Valspar tendered defense of the underlying lawsuits to Continental, National Union, and its other historical insurers, Continental determined it had a duty to defend Valspar.   (Second Aff. of Kristen Quast ¶ 3, May 31, 2012, Docket No. 187; Supplemental Aff. of Kristen Quast, Exs. A-D, July 12, 2012, Docket No. 213.)  Subject to a reservation of rights, Continental agreed to allow Valspar to retain its own independent counsel and agreed to reimburse Valspar for its defense payments incurred in defending against the underlying actions.  (First Decl. of Karen Ventrell, Ex. 1 at 2, Sept. 15, 2009, Docket No. 35; Supplemental Quast Aff., Exs. A-D.)

Continental reimbursed Valspar for over $500,000 in defense costs.  (Decl. of Wayne Binowski, Ex. A, July 12, 2012, Docket No. 215.)  In February 2009, Continental filed a complaint against National Union, seeking contribution to those costs.   In its complaint, Continental sought "a judicial declaration that National Union has a duty to defend Valspar" and "a judicial declaration that Continental has a right of contribution and is entitled to contribution from National Union for defense expenses advanced by Continental to or on behalf of Valspar in connection with the Underlying Actions in an amount to be determined at trial."  (Compl. at 10.)

Valspar brought a motion to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2).  (Mot. to Intervene, July 21, 2009, Docket No. 20.)  As part of the Program, National Union and Valspar agreed that Valspar would reimburse National Union for defense costs expended on Valspar's behalf.  (*See* Order at 36-46, Mar. 29, 2013, Docket

No. 220.)   Therefore, Valspar argued that intervention was necessary to protect its interest because any contribution obligation of National Union would ultimately be borne by Valspar pursuant to the Program.  (Mem. in Supp. of Mot. to Intervene, July 21, 2009, Docket No. 22.)   United States Magistrate Judge Jeanne Graham granted Valspar's motion.  (Order, Sept. 1, 2009, Docket No. 30.)

## II.    SUMMARY JUDGMENT ORDER

In May 2012, both Valspar and Continental moved for summary judgment and National Union requested judgment independent of the motion.  Continental argued that either National Union or Valspar had a duty to contribute to defense costs Continental incurred in defending Valspar against underlying toxic tort lawsuits that triggered coverage during the Program years.  In bringing its motion, Continental relied upon Minnesota law which provides that "[a] primary insurer that has a duty to defend, and whose policy is triggered for defense purposes, has an equitable right to seek contribution for defense costs from any other insurer who also has a duty to defend the insured, and whose policy has been triggered for defense purposes." *Cargill, Inc. v. Ace Am. Ins. Co.*, 784 N.W.2d 341, 354 (Minn. 2010).  Valspar argued that neither it, nor National Union owed a duty to defend Valspar during the Program years, and therefore could not be compelled to contribute to defense costs.

On March 29, 2013, the Court issued an order granting in part Continental's motion for summary judgment.  (Order, Mar. 29, 2013, Docket No. 220.)  The Court first determined that National Union had a duty to defend Valspar during all of the Program

years.  (*Id.* at 27-46.)  The Court went on to find that National Union had a duty to contribute to defense costs incurred by Continental in defending Valspar against lawsuits that triggered coverage under the Program years.  (*Id.* at 47-54.)

In determining the amount that National Union was required to contribute to defense costs the Court analyzed how many insurers had a duty to defend that was triggered by the underlying lawsuit.  (*Id.* at 54.)  This analysis was required because under *Cargill*'s duty to contribute, each insurer "shall be responsible in equal shares for the cost of defense" of the claims at issue.  784 N.W.2d at 354 (internal quotation marks omitted).  The Court found that there were seven insurers whose duty to defend Valspar was triggered by the underlying lawsuits.  (Order at 2, 54 & n.46.)  Specifically, the Court found that these insurers included:

(1)  Maryland Casualty Company (a/k/a Zurich) (1961-1967)

(2)  Employers Mutual Liability Company (a/k/a Wasau/Nationwide) (1967-1971)

(3)  Continental Casualty Company (1971-1976)

(4)  Liberty Mutual Insurance Company (1976-1981; 1985-1990)

(5)  American Insurance Company (a/k/a Fireman's Fund Insurance Companies) (1981-1984)

(6)  International Indemnity Company (1984-1985)

(7)  National Union (a/k/a AIG) (1990-2004)

(*Id.* at 2-4 & n.2, n.4.)  Therefore, the Court held that National Union was required to contribute one-seventh of defense costs incurred by Continental.  (*Id.* at 55.)

**ANALYSIS**

Continental now brings a motion to correct or amend the Court's summary judgment order pursuant to Federal Rule of Civil Procedure 59(e).[1] Continental requests a correction to the Court's statement at pages 2 and 54 of the March 2013 summary judgment order that there are **seven** primary insurers to whom Valspar tendered the underlying toxic tort lawsuits. Continental argues that the Court mistakenly characterized International Indemnity Company ("International")[2] as a primary insurer, and contends that International is actually an umbrella insurer. Therefore, Continental seeks an

---

[1] Continental states that its motion is brought pursuant to Fed. R. Civ. P. 59(e). Rule 59(e) requires that a motion to amend "be filed no later than 28 days after the entry of judgment." Here, Continental's motion to reconsider was not filed until May 23, more than twenty-eight days after the Court's March 29 order. However, the Local Rules also provide for a "motion for reconsideration." Pursuant to the rules, a party is required to obtain "the court's prior permission" before filing a motion to reconsider. D. Minn. LR 7.1(j). Continental filed a letter complying with Local Rule 7.1(j), requesting permission to file the present motion. (Letter, Apr. 12, 2013, Docket No. 223.) The Court granted Continental's request and specified the time in which the motion was to be filed. (Notice, Apr. 29, 2013, Docket No. 233.) Continental filed its motion within the time specified by the Court. (Mot. to Alter/Amend/Correct J., May 13, 2013, Docket No. 239.) Whether Continental's motion is timely as a Rule 59(e) motion, or whether it is more properly considered as a motion to reconsider brought pursuant to the Local Rules is irrelevant because "[a] motion to reconsider under Local Rule 7.1[(j)] is the 'functional equivalent' of a motion to alter or amend the judgment under Rule 59(e)." *Cenveo Corp. v. S. Graphic Sys., Inc.*, Civ. No. 08-5521, 2011 WL 2619077, at *1 (D. Minn. July 1, 2011) (quoting *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999)).

[2] In the parties' submissions related to this motion, they refer to International as International Insurance Company. The Court's March 2013 order referred to International as the International Indemnity Company because that was the name used by Valspar's corporate representative. (*See* Second Quast Aff. ¶ 4.) The parties do not dispute that the entity referred to in the Quast Affidavit is the entity referred to here as International Insurance Company. Currently, Westchester Fire Insurance Company ("Westchester") is the successor by novation to the International insurance policy. After Continental filed the present motion for reconsideration, Westchester filed a motion to intervene which is pending before the Magistrate Judge. (Mot. to Intervene, May 23, 2013, Docket No. 245.)

amended order stating that there are only **six** primary insurers and requiring National Union to contribute one-sixth of defense costs incurred by Continental in defending the underlying lawsuits.

## I.      STANDARD OF REVIEW

"Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 863 (8th Cir. 2011) (internal quotation marks omitted). A motion to reconsider should not be employed "to relitigate old issues," but rather to "afford an opportunity for relief in extraordinary circumstances." *Dale & Selby Superette & Deli v. U.S. Dep't of Agric.*, 838 F. Supp. 1346, 1348 (D. Minn. 1993) (internal quotation marks omitted).

## II.     NATIONAL UNION'S CONTRIBUTION SHARE

The Court agrees with Continental that the March 2013 order mistakenly characterized International as a primary, rather than an umbrella insurer. (*See* Second Quast Aff. ¶ 4.) In the 1984-1985 policy period triggered by the underlying lawsuits, Valspar had two insurers: Nationwide Insurance Company issued a primary insurance policy and International issued an umbrella insurance policy. An umbrella policy is different than a primary liability policy, serving "to provide for a higher limit of liability for those losses typically covered by liability insurance-general liability [and] to provide for some coverage of those less common losses not typically covered by liability insurance." *Fed.-Mogul U.S. Asbestos Pers. Injury Trust v. Cont'l Cas. Co.*, 666 F.3d

384, 388 (6th Cir. 2011) (internal quotation marks omitted).   Therefore, the Court's statement that "[s]even primary insurer's policies (including National Union's and Continental's) were triggered with respect to the four underlying lawsuits," (Order at 22, 54), when referencing the International policy is incorrect.   The Court will file an amended summary judgment order contemporaneously with this order correcting the characterization of International as a primary insurer on pages 22 and 54 and footnote 46 of the March 2013 order.

However, International's characterization as an umbrella insurer does not change the Court's ultimate finding that National Union owes Continental a one-seventh share of defense costs Continental incurred in the underlying lawsuit, and therefore the Court will deny Continental's motion for reconsideration.   Acknowledging that International is not a primary insurer does not, as Continental suggests, compel the conclusion that International did not owe a duty to defend Valspar in connection with the underlying lawsuits.   Under *Cargill*, "any other insurer who also has a duty to defend the insured, and whose policy has been triggered for defense purposes," is required to contribute to defense costs.   784 N.W.2d at 354.   Therefore, the relevant question for determining National Union's share of contribution is not whether International was an umbrella insurer, but whether it had a duty to defend and whether its policy was triggered.[3]

---

[3] *Cargill* at times references the contribution obligations of "co-primary insurers," 784 N.W.2d at 351, 354, potentially suggesting that equitable contribution might apply only between insurers issuing primary insurance policies.   But the *Cargill* court's references to "co-primary insurers" is not remarkable given that the court was ascertaining only the rights of primary insurers and was not confronted with a situation in which an excess or umbrella insurer might

(Footnote continued on next page.)

In support of its finding that International was one of the insurers that bore a share of Continental's defense costs, the Court in its March 2013 order cited to three pieces of evidence.  First, in an affidavit Valspar listed International as its sole historical insurer for the period from 1984-1985.  (Second Quast Aff. ¶ 4.)  Second, Continental's corporate deponent stated that the 1984-1985 Nationwide primary insurance policy had been exhausted, and the International umbrella policy had dropped down and owed Valspar a

_____

(Footnote continued.)

owe a duty to defend because primary insurance had been exhausted.  Despite the references to primary insurers, *Cargill*'s holding appears to apply more broadly to all insurers with a duty to defend the same risk.  *Cargill* held that "a primary insurer that has a duty to defend, and whose policy is triggered for defense purposes, has an equitable right to seek contribution for defense costs from **any other insurer** who also has a duty to defend the insured, and whose policy has been triggered for defense purposes."  *Id.* at 354 (emphasis added).  Thus, the obligation to contribute as defined in *Cargill* applies to any insurer that owes a duty to defend, whether a primary insurer or not.  *See Kraus-Anderson Constr. Co. v. Transp. Ins. Co.*, No. A10-698, 2011 WL 1364251, at *5 (Minn. Ct. App. Apr. 12, 2011) (interpreting *Cargill* as "establish[ing] that insurers with duties to defend and whose policies have been triggered for defense purposes have an equitable right to seek contribution from other insurers who also have a duty to defend and whose policies have been triggered for defense purposes").  Additionally, the *Cargill* court defined contribution as "the remedy securing the right of one who has discharged more than his fair share of a **common liability or burden** to recover from another who is also liable the proportionate share which the other should pay or bear."  784 N.W.2d at 352, n.11 (emphasis added) (internal quotation marks omitted).  Excess insurance typically only applies once a primary layer of insurance has been exhausted.  Therefore in the absence of exhaustion, an excess insurer usually will not owe a duty to defend and will not share a common liability or burden with primary insurers.  Instead the common liability will exist only between the primary layer underlying the excess insurance and other primary insurers.  In situations where an umbrella or excess insurer has a duty to defend that is triggered by the exhaustion of any primary layer of coverage, however, the excess or umbrella insurer would share common liability with any other primary insurers owing a duty to defend the same insured for the same risk.  *See Flintkote Co. v. Gen. Accident Assurance Co. of Canada*, No. C 04-01827, 2008 WL 3270922, at *26 (N.D. Cal. Aug. 6, 2008) ("If an excess insurer is required to 'drop down' and assume the responsibilities of a particular primary insurer, then the excess insurer would be considered a **substitute** primary insurer." (emphasis in original)).  Therefore, International's duty to defend, not its status as an umbrella insurer, is the relevant inquiry in determining the share of costs to which National Union is required to contribute.

duty to defend.  (Third Aff. of John P. Fischer, Ex. A at 56-58, Mar. 22, 2010, Docket No. 127.)  Continental's corporate deponent also testified that, in addition to Continental, six other insurers owed a duty to defend.  (*Id.*, Ex. A at 59-60.)  Third, the record contained the notices Valspar sent to its insurers, indicating that Valspar tendered the four underlying lawsuits to the 1984-1985 International insurance policy, triggering the policy.  (Compl., Exs. C, D at 5, E, F at 12, G, H at 19, I, J at 26, Feb. 9, 2009, Docket No. 2.)

In connection with the cross motions for summary judgment, Continental presented no evidence about International's duty to defend, did not dispute the testimony that International owes a duty to defend, and did not dispute that the duty was triggered by Valspar's tender of the four underlying lawsuits.  In its brief in support of its motion for summary judgment, Continental did not mention which of Valspar's historical insurers were obligated to contribute to defense costs.  The only reference Continental made to equitable contribution shares was to "propose[] that a 1/6 share of defense costs be allocated to the National Union years," without any citation to the record.  (Pl.'s Mem. in Supp. of Summ. J. at 28, May 31, 2012, Docket No. 192.)  In response to Valspar's motion for summary judgment, Continental's only reference to share was that "a fair share of defense costs should be allocated to and borne by the National Union Insurance Program."  (Pl.'s Mem. in Opp. to Mot. for Summ. J. at 38, July 5, 2012, Docket No. 208.)   Finally, in its reply memorandum, Continental objected to Valspar's contention that defense costs should be allocated over seven or possibly eight insurers,

stating only that "this position contradicts Valspar's agreement that the Nationwide policy has been exhausted."  (Reply at 9, July 12, 2012, Docket No. 214.)

Similarly, in support of its motion for reconsideration, Continental provides no newly discovered evidence to contradict the deposition testimony that International owed a duty to defend.  Nor does Continental identify any new case law or manifest legal error that would support reconsideration.  *See Cartier v. Wells Fargo Bank, N.A.*, Civ. No. 11-2168, 2012 WL 2449944, at *3 (D. Minn. June 27, 2012).  At most, Continental appears to be challenging the accuracy or reliability of the deposition testimony indicating that International had a duty to defend.  However, these challenges are arguments that Continental could have, but did not, raise at the time of the motions for summary judgment.  As such, these challenges are an inappropriate basis to support a motion for reconsideration.  *See Bannister v. Armontrout*, 4 F.3d 1434, 1440 (8th Cir. 1993) ("A Rule 59(e) motion cannot be used to raise arguments which could, and should, have been made before the trial court entered final judgment." (internal quotation marks omitted)).  The only evidence identified by Continental in support of its motion for reconsideration is portions of the record that describe International as an umbrella insurer.  As explained above, the Court agrees that the record supports the characterization of International as an umbrella insurer.  But International's status as an umbrella insurer does not contradict the undisputed testimony that International owed a duty to defend.  Therefore, the Court finds that the only evidence in the record in front of the Court when considering the summary judgment record, and the only evidence now, was that for purposes of

determining National Union's contribution obligation, seven insurers owed Valspar a duty to defend.

In arguing that International's status as an umbrella insurer is dispositive of the share of defense costs to be allocated to National Union, Continental relies heavily on footnote 45 of the March 2013 order, discussing Valspar's excess insurer.  In footnote 45, the Court rejected Valspar's contention that contribution potentially should be split into eighths.  (Order at 54 n.45.)  Valspar argued that it carried excess insurance during the relevant time period, and asserted in its briefing that the excess insurer should potentially be counted in determining how many insurers were required to contribute to defense costs.  (*Id.*)   The Court explained that "[g]enerally, '[t]he doctrine of equitable contribution applies to insurers who share the **same** level of obligation on the **same** risk as to the **same** insured.'  Therefore '[a]s a general rule, there is no contribution between primary and excess carriers of the same insured absent a specific agreement to the contrary.'"  (*Id.* (quoting *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 304 n.4 (Cal. Ct. App. 1998) (emphases in original).)  The Court concluded that "[t]he record contains no evidence of an agreement with Valspar's excess insurer to share costs," and therefore did not include the excess insurer in the division of defense costs. (*Id.*)

What the footnote perhaps did not make clear was that the record also did not contain evidence that the excess insurer in question owed a **duty to defend** during any period of time implicated by the underlying lawsuits.  In connection with the motions for summary judgment, Valspar's contention that the contribution should be split into eighths

was equivocal at best.[4]   Valspar's own uncertainty about the possibility of an eighth insurer with a duty to defend suggested that the record did not support splitting contribution obligations into eighths.   Additionally, Continental's corporate deponent did not testify that the primary insurance underlying the excess insurer had been exhausted, and only testified that **if** the primary insurance had been exhausted, the excess insurer would owe a duty to defend.   (Third Aff. of John P. Fischer, Ex. A at 57-58.)   Therefore, the record at the time of summary judgment did not support finding that Valspar's excess insurer owed a duty to defend, and therefore did not require the conclusion that National Union owed Continental only a one-eighth share.

As a final matter, the Court's decision regarding National Union's share of contribution is based solely on the record before the Court and has no bearing on the duties, rights, or obligations of entities that are not parties to this lawsuit.   The Court was confronted only with the question of whether National Union owed a duty to defend, and if so, how much it was required to contribute to Continental's defense costs.   Continental knew that the amount of contribution it could recover from National Union would necessarily involve inquiry into the number of other potentially liable insurers.   Yet Continental chose to have its right of contribution from National Union determined without joining the other potentially liable insurance companies or producing their

---

[4]   In its moving memorandum, Valspar asserted that "the **most** Continental would be entitled to recover from the Program under Minnesota law would be a 1/7 share." (Valspar's Mem. in Supp. of Mot. for Summ. J. at 33, May 31, 2012, Docket No. 186 (emphasis in original).)  In response to Continental's motion for summary judgment, Valspar argued only that "the most Continental could recover from [National Union] is a 1/7 . . . or 1/8 share." (Valspar's Mem. in Opp. to Mot. for Summ. J. at 21, July 5, 2012, Docket No. 200.))

insurance policies to the Court.  Therefore, as with the other five primary insurers, the Court was required to base its conclusion regarding International's duty to defend upon the agreement of National Union, Valspar, and Continental, the deposition testimony, and affidavits produced in connection with the motions for summary judgment.  It is certainly possible that a different court confronted with a different record could conclude that International, or indeed any of Valspar's historical insurers other than National Union, did not owe a duty to defend Valspar from the underlying lawsuits.  However, the undisputed record before this Court on summary judgment indicated that seven insurance companies, including National Union, owed a duty to defend Valspar.  For purposes of determining National Union's contribution obligations, the Court was therefore required to conclude that National Union owes Continental a one-seventh share of defense costs. Therefore, the Court will deny Continental's motion for reconsideration.[5]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Motion to Alter/Amend/Correct Judgment [Docket No. 239] is **DENIED**.

---

[5] Continental also requests certain amounts of prejudgment interest in its motion for reconsideration.  Because this request is related to the total amount of contribution National Union is required to pay, an issue that the Court has yet to decide, the Court will defer consideration of prejudgment interest at this time.

2.      The Court's amended summary judgment order, filed on August 9, 2013[Docket No. 260] will replace the summary judgment order filed on March 29, 2013 at Docket Number 220.

DATED:   August 9, 2013                              _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                   JOHN R. TUNHEIM
                                                      United States District Judge