## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CONTINENTAL CASUALTY
COMPANY,

Civil No. 09-287 (JRT/JJG)

Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

**MEMORANDUM OPINION
AND ORDER**

Defendant,

and

THE VALSPAR CORPORATION,

Intervenor-Defendant.

Karen H. Ventrell, **COLLIAU CARLUCCIO KEENER MORROW
PETERSON & PARSONS**, 2020 K Street NW, Suite 505, Washington,
DC 20006; and Jeanne H. Unger and Susan E. Gustad, **BASSFORD
REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN
55402, for plaintiff.

Dale O. Thornsjo and Mark R. Azman, **O'MEARA LEER WAGNER &
KOHL, PA**, 7401 Metro Boulevard, Suite 600, Minneapolis, MN 55439,
for defendant.

Andrew J. Detherage and John P. Fischer, **BARNES & THORNBURG
LLP**, 11 South Meridian Street, Suite 1313, Indianapolis, IN 46204; and
Annamarie A. Daley, **BARNES & THORNBURG LLP**, 225 South Sixth
Street, Suite 2800, Minneapolis, MN 55402, for intervenor-defendant.

Plaintiff Continental Casualty Company ("Continental") and Defendant National

Union Fire Insurance Company of Pittsburgh, PA ("National Union") each provided

commercial general liability insurance to the Valspar Corporation ("Valspar") at different times between the period from 1971 through 2004.   Beginning in 2006, Continental incurred costs in defending Valspar against four toxic tort lawsuits ("the underlying lawsuits"), which alleged damages resulting from long-term exposure to products manufactured or sold by Valspar.   The underlying lawsuits implicated the insurance policies of all of Valspar's historical insurers – including Continental and National Union – as they alleged exposure to and injury from Valspar's products beginning, at the latest, in 1966, and extending through at least May 1990.

Continental brought the present declaratory judgment action against National Union seeking contribution from National Union to the costs Continental incurred in defending Valspar against the underlying lawsuits, based on the theory that National Union owed Valspar a duty to defend against the underlying lawsuits, and therefore has an equitable obligation to contribute to defense costs incurred by another insurer in connection with those lawsuits.   On March 29, 2013, the Court granted in part Continental's motion for summary judgment, finding that National Union had a duty to defend Valspar and therefore has a duty to contribute to defense costs incurred by Continental.   The Court's order left open the question of the dollar amount of contribution that National Union was required to make to Continental, pending the receipt of further information from the parties regarding the defense costs incurred with respect to the underlying lawsuits and the amount, if any, that National Union had already contributed.   The parties have now submitted two sets of supplemental briefs regarding the amount of contribution owed by National Union.   Because Continental Casualty has

presented undisputed evidence that it incurred $563,645.36 in defending the underlying lawsuits, and National Union is responsible for a one-seventh share of those costs, the Court will order contribution in the amount of $80,520.77 plus interest recoverable thereon in an amount to be determined.

## BACKGROUND[1]

### I.    VALSPAR'S INSURERS

Continental issued five commercial general liability insurance policies to Valspar, providing coverage from January 1, 1971, through January 1, 1976.  (Compl. ¶ 9, Feb. 9, 2009, Docket No. 1.)  Under these policies, Continental had "the right and duty to defend any suit against" Valspar seeking damages for bodily injury or property damage to which the insurance applied.  (*Id.* ¶ 10, Ex. A at 7.)[2]

From 1990 through 2004 Valspar and National Union entered into annual agreements which together formed an insurance program ("the Program") and provided general commercial liability insurance to Valspar.  Each Program year consisted of a general commercial liability policy in addition to other documents such as indemnity agreements, promissory notes, funding schedules, and deductible liability insurance endorsements, which further defined the financial and other obligations of Valspar and

---

[1] The Court recites the background here only to the extent necessary to rule on the issues presently before it.  A more complete explanation of the insurance policies and the facts surrounding Continental's defense of the underlying lawsuits can be found in the Court's previous order.  *See Cont'l Cas. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 940 F. Supp. 2d 898 (D. Minn. 2013).

[2] All references to page numbers refer to the CMECF pagination.

National Union with respect to the insurance provided by the Program.  (*See* Second Aff.

of Kristen Quast, Exs. 1-42, May 31, 2012, Docket No. 187.)  In particular, under various

Program years, Valspar was either required to reimburse National Union for costs

incurred in defending Valspar under the Program up to the deductible limit of the

Program year (*see, e.g.*, Second Quast Aff., Ex. 31 at 1612, Ex. 36 at 1676), reimburse

National Union for defense costs without limitation (*see id.*, Ex. 39 at 1863, Ex. 41 at

1967), or assume direct responsibility for paying defense costs under the Program

policies (*see id.*, Ex. 35 at 1631).

## II.    THE UNDERLYING LAWSUITS

The underlying lawsuits were filed in 2005 and 2006, and alleged harm caused by

long-term exposure to benzene contained in products manufactured or sold by Valspar.

(Compl. ¶¶ 15, 18, 21, 24; Second Decl. of Karen Ventrell, Ex. A at 1, 6, Ex. B at 42, 45,

Ex. C at 1, 4, Ex. D at 28, 36-38, Jan. 25, 2010, Docket Nos. 110-11.)  Because of the

length of exposure and timing of the injuries alleged, the underlying lawsuits triggered

coverage years of Continental, National Union, and other insurance companies that

provided insurance to Valspar between 1976 and 1990.  (Second Ventrell Decl., Ex. A at

6, Ex. B at 45, Ex. C at 4, Ex. D at 36-38.)

Valspar tendered defense of the underlying lawsuits to Continental, National

Union, and its other historical insurers, after which Continental determined it had a duty

to defend Valspar.  (Second Quast Aff. ¶ 3; Supplemental Aff. of Kristen Quast, Exs. A-

D, July 12, 2012, Docket No. 213.)   Subject to a reservation of rights, Continental

allowed Valspar to retain its own independent counsel and agreed to reimburse Valspar for its defense payments reasonably incurred in defending against the underlying actions. (First Decl. of Karen Ventrell, Ex. 1 at 2, Sept. 15, 2009, Docket No. 35; Supplemental Quast Aff., Exs. A-D.)  Continental requested contribution to Valspar's defense from National Union, which National Union declined to provide on the basis that Valspar had not exhausted certain deductible amounts under the Program and therefore National Union's defense obligations under the Program years were not implicated.  (Compl., Ex. K[3]; Second Quast Aff., Ex. 43 at 5592.)

Continental reimbursed Valspar for over $500,000 in costs Valspar incurred defending against the underlying lawsuits.  (Decl. of Wayne Binkowski, Ex. A, July 12, 2012, Docket No. 215.)  On February 9, 2009, Continental brought the present action against National Union, seeking contribution to those costs.  In its complaint, Continental sought "a judicial declaration that National Union has a duty to defend Valspar" and "a judicial declaration that Continental has a right of contribution and is entitled to contribution from National Union for defense expenses advanced by Continental to or on behalf of Valspar in connection with the Underlying Actions in an amount to be determined at trial."  (Compl. at 10.)

Valspar moved to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2), arguing that intervention was necessary to protect its interest because any contribution obligation of National Union would ultimately be borne by Valspar pursuant to the Program.  (Mot. to Intervene, July 21, 2009, Docket No. 20; Valspar's Mem. in Supp. of

---

[3] Exhibits B through L to the complaint were filed at Docket Number 2.

Mot. to Intervene, July 21, 2009, Docket No. 22.)   The Magistrate Judge granted

Valspar's motion.  (Order, Sept. 1, 2009, Docket No. 30.)

## III.    SUMMARY JUDGMENT ORDER

In  May  2012,  both  Valspar  and  Continental  moved  for  summary  judgment.

(Valspar's Mot. for Summ. J., May 31, 2012, Docket No. 184; Continental's Mot. for

Summ. J., May 31, 2012, Docket No. 191.)   National Union also requested judgment

independent of the motion.  (National Union's Mem. of Law in Resp. to Mots. for Summ.

J. at 1-2, July 5, 2012, Docket No. 205.)  In support of its motion for summary judgment,

Continental relied upon Minnesota law which provides that "[a] primary insurer that has

a  duty  to  defend,  and  whose  policy  is  triggered  for  defense  purposes,  has  an  equitable

right to seek contribution for defense costs from any other insurer who also has a duty to

defend the insured, and whose policy has been triggered for defense purposes," *Cargill,*

*Inc. v. Ace Am. Ins. Co.*, 784 N.W.2d 341, 354 (Minn. 2010), to argue that either National

Union  or  Valspar  had  a  duty  to  contribute  to  defense  costs  Continental  incurred  in

defending  Valspar  against  the  underlying  lawsuits  that  triggered  coverage  during  the

Program years.  Valspar argued that because it was ultimately responsible for paying its

own defense costs under some of the Program years, National Union did not owe a duty

to  defend  Valspar  against  the  underlying  lawsuits,  and  therefore  could  not  be  compelled

to contribute to defense costs incurred by Continental.  (Valspar's Mem. in Supp. of Mot.

for  Summ.  J.  at  23-24,  May  31,  2012,  Docket  No.  186.)   Valspar  also  argued  that  it  was

essentially self-insured during the Program years, and because of its status as an insured

it was "not obligated to pay for, or contribute to its defense" incurred by Continental in defending the underlying lawsuits. (*Id.* at 2, 13-14.)

On March 29, 2013, the Court issued an order granting in part and denying in part the motions for summary judgment, concluding that National Union, but not Valspar owed a duty to defend and an accompanying duty to contribute to costs incurred by Continental in defense of the underlying lawsuits. *Cont'l Cas. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 940 F. Supp. 2d 898, 930 (D. Minn. 2013). The Court began by determining that, despite Valspar's obligation to reimburse or front certain defense costs under the Program years, National Union had a duty to defend Valspar during all of the Program years. *Id.* at 920-26. The Court went on to conclude that, pursuant to the rule enunciated in *Cargill*, National Union – as a primary insurer with a duty to defend whose policies had been triggered for defense purposes – had a duty to contribute to defense costs incurred by Continental in defending Valspar against the underlying lawsuits. *Id.* at 926-30.

In determining the amount that National Union was required to contribute to defense costs the Court analyzed how many of Valspar's historical insurers had a duty to defend that was triggered by the underlying lawsuits. *Id.* at 930. This analysis was required because "[u]nder *Cargill*'s duty to contribute, each insurer 'shall be responsible in equal shares for the cost of defense' of the claims at issue." *Id.* at 930 (quoting *Cargill*, 784 N.W.2d at 354). The Court found that there were seven insurers whose duty to defend Valspar was triggered by the underlying lawsuits, and therefore held that

National Union was required to contribute one-seventh of the defense costs incurred by Continental. *Id.* at 930.[4]

## IV.    AMOUNT OF CONTRIBUTION

The Court's March 2013 Order left open the question of the dollar amount of contribution that National Union was required to make to Continental due to Continental's conflicting representations regarding the amount it had expended in defending the underlying lawsuits. *Id.* at 930. Specifically, in support of its motion for summary judgment, Continental alleged that it had paid a total of $538,920.94 in defense costs. (Continental's Mem. in Supp. of Summ. J. at 16, May 31, 2012, Docket No. 192.) But in its reply memorandum, Continental indicated that it had incurred $551,060.21 in defense expenses related to the underlying lawsuits. (Continental's Reply at 10, July 12, 2012, Docket No. 214.) In light of these, and other discrepancies in the record regarding the appropriate amount of contribution, the Court "require[d] the parties to submit information to the Court clarifying the amount of defense expenses incurred by

---

[4] Continental later brought a motion for reconsideration of the Court's order on the motions for summary judgment seeking "an amended order stating that there are only **six** primary insurers and requiring National Union to contribute one-sixth of defense costs incurred by Continental in defending the underlying lawsuits." *Cont'l Cas. Co.*, 940 F. Supp. 2d at 934 (emphasis in original). In ruling on the motion for reconsideration, the Court acknowledged that it had erroneously characterized an umbrella insurer as a primary insurer, and filed an amended order correcting that error. *Id.* But the Court concluded that this mischaracterization did not alter its "ultimate finding that National Union owes Continental a one-seventh share of defense costs Continental incurred in the underlying lawsuit" because, according to the record evidence before the Court, that umbrella insurer owed a duty to defend and its policy was triggered by the underlying lawsuits, and it could therefore be included in the number of insurers required to contribute an equal share to defense costs. *Id.* at 934-35.

Continental in defending Valspar against the underlying lawsuits." *Cont'l Cas. Co.*, 940 F. Supp. 2d at 930.

Pursuant to the Court's order, Continental submitted a supplemental brief indicating that it had, in fact, paid a total of $563,645.36 on behalf of Valspar in defense of the underlying lawsuits. (Continental's Br. in Supp. of Amount of Contribution at 5, Ex. 1, Apr. 19, 2013, Docket No. 226.) Continental explained that the difference between the two amounts provided to the Court at the time of summary judgment and its new requested amount were due to the "inadvertent omission of invoices," decimal point errors, and other discrepancies which it could not explain. (*Id.* at 2 & n.2.) Valspar did not contest that Continental paid $563,645.36 in defense costs with respect to the underlying lawsuits, but argued that in ascertaining the amount of National Union's contribution, the Court should also consider costs that Valspar contributed towards its own defense of the underlying lawsuits. (Valspar's Resp. & Objection to Continental's Br. in Supp. of Amount of Contribution, May 3, 2013, Docket No. 234.) Specifically, Valspar argued that it contributed $15,823.94 to the defense of the *Rush* and *Leforce* underlying lawsuits and $51,802.55 in defense of the *Diorio* underlying lawsuit, which total of $67,626.49 should be credited against any contribution award entered in Continental's favor, as to National Union's contribution obligation.

During a telephone conference, the Court requested that Valspar provide the Court with proof of payment of the defense costs it claimed to have expended on its behalf and explain the legal basis for its contention that those costs should be included in the Court's

equitable contribution analysis.   (Minute Entry, Oct. 4, 2013, Docket No. 264.)   The parties have since filed additional briefs in accordance with this directive.

The Court notes that this long and tortured quest to ascertain the appropriate amount of contribution, although largely not discussed by the parties at the time, began at the summary judgment stage with what appeared to be a simple discrepancy between Continental's opening and reply briefs.  Now, eight supplemental briefs and one motion for reconsideration later, the question before the Court is still whether any genuine issue of material fact remains regarding the amount of contribution to which Continental is entitled to receive from National Union.

## ANALYSIS

### I.       STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II.    AMOUNT OF CONTRIBUTION

The parties do not dispute that Continental incurred costs in the amount of $563,645.36 in defending Valspar against the underlying lawsuits. (Valspar's Supplemental Br. in Supp. of Amount of Contribution at 1-2, Oct. 25, 2013, Docket No. 265; Continental's Resp. to Valspar's Supplemental Br. in Supp. of Amount of Contribution at 1, Nov. 8, 2013, Docket No. 269; National Union's Resp. to Valspar's Supplemental Br. in Supp. of Amount of Contribution at 3, Nov. 8, 2013, Docket No. 270.) Instead, the focus of the parties' dispute in the briefs filed after the Court's ruling on their summary judgment motions is whether the amount Continental actually incurred in defending Valspar is the appropriate amount to use when determining National Union's obligation to contribute a one-seventh share. If the Court determines that the appropriate amount to consider in ascertaining equitable contribution is $563,645.36, based on the Court's previous rulings, National Union owes a one-seventh

share of that cost, or $80,520.77.[5]   But Valspar argues that the Court must consider the total costs of defending the underlying lawsuits – adding the $67,626.49 Valspar incurred in defending itself against the underlying lawsuits to the $563,645.36 expended by Continental – to arrive at $631,271.85 in total defense costs, with National Union being liable for a one-seventh equitable contribution share of $90,181.69.   Valspar argues that the Court must then subtract the $67,626.49 expended by Valspar from National Union's share, and therefore require contribution from National Union in the amount of only $22,555.20.   (Valspar's Supplemental Br. in Supp. of Amount of Contribution at 11-12.) In order to determine the appropriate starting point for its equitable contribution analysis, the Court begins with the basic principles underpinning equitable contribution between

---

[5] National Union argues that a dispute remains regarding the ultimate issue of "who is obligated to pay Continental" as between Valspar and National Union.   (National Union's Resp. to Valspar's Supplemental Br. in Supp. of Amount of Contribution at 1.)   Specifically, National Union argues that the Court has not yet "impose[d]" the one-seventh share of defense costs from the Program years "on either National Union or Valspar." (*Id.* at 2.)   But this argument reflects a misunderstanding of the Court's previous order.   Contrary to National Union's argument, the Court has already concluded that National Union, because of its duty to defend Valspar, is liable to Continental for the contribution.   *See Cont'l Cas. Co.*, 940 F. Supp. 2d at 930 ("Therefore, Continental may recover **from National Union** a one-seventh share of the costs it expended in defending Valspar." (emphasis added)); *see also id.* at 926 ("Under *Cargill*, the Court finds that Continental has a clear right to seek contribution **from National Union**." (emphasis added)). The order from the Court seeking supplemental briefing as to the amount of contribution did not provide the parties with the occasion to reargue or seek reconsideration of this conclusion.   The only issue presently properly before the Court is the amount of contribution that Continental is entitled to recover from National Union, consistent with the Court's legal conclusions in its summary judgment order.   Accordingly, to the extent National Union's argument can be construed as seeking such reconsideration, the Court will not consider the argument, as it is procedurally improper.   Furthermore, as noted in the Court's summary judgment order, whether National Union can compel Valspar to pay the amount of contribution on National Union's behalf or reimburse National Union for any contribution payment made to Continental is an issue addressed in the cross claims between those parties which remain pending in this litigation. *Id.* at 914 n.23.   But this issue is between those two parties and does not affect Continental's right to obtain contribution from National Union, and also does not prevent the Court from determining, in this Order, the amount of contribution to which Continental is entitled.

insurers before examining the specific facts of this case and the arguments made by the parties.

### A.      Equitable Contribution

Contribution is "an equitable doctrine" which generally "requires only that persons under a common burden share that burden equitably." *Peterson v. Little-Giant Glenco Portable Elevator Div. of Dynamics Corp. of Am.*, 366 N.W.2d 111, 116 (Minn. 1985) (internal quotation marks omitted).  "'The essential elements of a contribution claim are (1) common liability of two or more actors to the injured party; and (2) the payment by one of the actors of more than its fair share of that common liability.'" *A.P.I., Inc. v. Home Ins. Co.*, 706 F. Supp. 2d 926, 946 (D. Minn. 2010) (quoting *Nuessmeier Elec., Inc. v. Weiss Mfg. Co.*, 632 N.W.2d 248, 251 (Minn. Ct. App. 2001)).  The Minnesota Supreme Court has explained that "what constitutes 'common liability' is not susceptible of a single precise definition," and because the concept is "an element of the equitable remedy of contribution" it has been "accorded some elasticity." *Horton ex rel. Horton v. Orbeth, Inc.*, 342 N.W.2d 112, 114 (Minn. 1984).  But the court has "uniformly declined to allow contribution where there has been a valid determination on the merits that common liability (however flexible its definition) could never have existed." *Id.*

With respect to equitable contribution in the insurance context specifically, the Minnesota Supreme Court has explained that equitable contribution is the right of one insurer "to seek contribution for defense costs from any other insurer who also has a duty to defend the insured, and whose policy has been triggered for defense purposes."

*Cargill, Inc.*, 784 N.W.2d at 354; *see also id.* 352 n.11.  Equitable contribution is allowed between insurers because, where more than one insurer "covers the same risk," but only one of the insurers supplies a defense, it has "discharge[d] a common obligation also belonging to another insurer."  *Id.* at 353; *see also Nat'l Indem. Co. v. St. Paul Ins. Cos.*, 724 P.2d 544, 545 (Ariz. 1986) ("Under the principle of equitable [contribution], the insurer which has performed the duty to provide a defense to its insured should be able to compel contribution for a share of the cost of defense from another insurer who had a similar obligation to the same insured but failed to perform it."); *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 303-04 (Cal. Ct. App. 1998) (explaining that the purpose of equitable contribution "is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others").

### B.     Amount of Contribution

The Minnesota Supreme Court has explained that the result of equitable contribution between insurers is that each insurer is ultimately responsible for "[a]n equal share for costs of defense."  *Cargill, Inc.*, 784 N.W.2d at 354; *see also Wooddale Builders, Inc. v. Md. Cas. Co.*, 722 N.W.2d 283, 304 (Minn. 2006) ("[D]efense costs are apportioned equally among insurers whose policies are triggered.").  Because the right to equitable contribution "arises when one of two or more insurers is obligated to indemnify or defend the same loss or claim and one of those insurers has paid more than its share of the loss," the Court must determine what that loss is before ascertaining the shares of the

various insurers.  *See Golden Eagle Ins. Co. v. Ins. Co. of the W.*, 121 Cal. Rptr. 2d 682, 692 (Cal. Ct. App. 2002) (emphasis and internal quotation marks omitted).  To determine the loss, the Court must consider all defense costs paid by insurers with common liability. *See MGA Entm't, Inc. v. Hartford Ins. Grp.*, 869 F. Supp. 2d 1117, 1123 (C.D. Cal. 2012) (considering payments made by all insurers in the relevant time period with respect to defense costs to determine each insurer's fair share).

For example, if four insurers had a common duty to defend against the underlying lawsuits, Continental had expended $150,000 in defense of the underlying lawsuits, and another of the insurers had expended $50,000, the total loss occasioned by the insurers' common liability would be $200,000.  Each insurer's fair share would therefore be $50,000, and Continental would be able to recover contribution only from the two insurers that had not paid anything, as the other historical insurer that contributed $50,000 to the defense had already paid its fair share.  With these principles in mind, the Court turns to Valspar's specific arguments.

## C.    Valspar's Payment of $15,823.94

Valspar argues that two different types of payments it made should be added to the total cost of defending the underlying lawsuits before determining National Union's one-seventh share, and that Valspar's payments should then be subtracted from the amount of contribution National Union owes.

First, Valspar contends that it expended $15,823.94 in defending against the underlying lawsuits for which Continental refused to reimburse Valspar.  Valspar argues

that these were costs incurred in defending against the underlying lawsuits and therefore should be added to the $563,645.36 claimed by Continental to arrive at the total amount of defense costs expended. But Valspar's argument is misplaced for at least two reasons. First, the Court already rejected a variation of this argument in its summary judgment order. In its motion for summary judgment Valspar argued that although Valspar incurred at least $184,000 in defending against one of the underlying lawsuits, Continental had breached its duty to defend by failing to reimburse Valspar for $15,823.94 of those expenses. *Cont'l Cas. Co.*, 940 F. Supp. 2d at 914. The Court noted that in certain circumstances an insurer's breach of its duty to defend its insured would preclude the insurer from seeking equitable contribution, because such conduct is inequitable. *Id.* at 929 (citing *Land O'Lakes, Inc. v. Emp'rs Mut. Liability Ins. Co. of Wis.*, 846 F. Supp. 2d 1007, 1043-44 (D. Minn. 2012). But the Court concluded that, "under the facts of this case, any breach by Continental [in failing to reimburse Valspar for the $15,823.94] was insufficient to bar its right to seek contribution from other insurers." *Id.* The Court therefore concluded that this unpaid amount had no bearing on Continental's ability to seek contribution or the amount of contribution that Continental could seek. Accordingly, the Court's summary judgment order foreclosed Valspar's attempt to insert this $15,823.94 into the total amount of defense costs for purposes of determining National Union's fair share of those costs.

Second, Valspar's argument conflates the nature of the relationship between two insurers – which gives rise to a right of equitable contribution – and the relationship between an **insured** and its insurer – which is one defined by the insurance policy

contract. *See MGA Entm't, Inc.*, 869 F. Supp. 2d at 1124 ("[A]n insurer's duty to defend its insured is governed by the contract of insurance between those parties, whereas an insurer's right to equitable contribution from other insurers is based in equitable principles, not contract." (alteration and internal quotation marks omitted)).  For example, an "insured has a **contract** right to have actions against him defended by the insurer, at its expense." *Chicago Title Ins. Co. v. F.D.I.C.*, 172 F.3d 601, 605 (8th Cir. 1999) (emphasis added) (internal quotation marks omitted) (explaining that breach of the duty to defend claims arise out of breaches of the insurance contract).  Therefore, if Valspar wanted to contest Continental's refusal to pay the $15,823.94 incurred in connection with the underlying lawsuits for which Continental was providing a defense, it should have brought a breach of contract action against Continental. *See Nucor Corp. v. Emp'rs Ins. Co. of Wausau*, 296 P.3d 74, 86 (Ariz. Ct. App. 2012) ("Unlike the relationship among multiple insurers, the insured and each insurer have an insurance contract that governs their relationship.  Here, Wausau was contractually obligated to provide Nucor with a complete defense.  If Wausau provided more coverage than bargained for under its insurance contract with Nucor, contractual remedies, not equitable contribution, were appropriate.").

But Valspar's payment of $15,823.94 has no bearing on Continental's right to recover equitable contribution against National Union because Valspar – **as an insured** – did not share with Continental and the other historical insurers a common duty to defend and the common liability to contribute to payment of defense costs that accompanies that duty.  Valspar argues, however, that "[a] 'fair allocation' of defense costs necessarily

requires that all defense costs paid by all parties be considered, **regardless of the source of the payment**." (Valspar's Supplemental Br. in Supp. of Amount of Contribution at 6 (emphasis added).) Valspar has not cited, and the Court has not found any authority for the proposition that any amount expended from any source in connection with a lawsuit becomes the responsibility of the insurers that had a duty to defend that lawsuit. Instead, equitable contribution, as explained above, is a form of relief that sounds in common liability or obligation. An insured who is being defended by one of its insurers shares no common liability for defense costs with a different insurer that also owes the insured a duty to defend. The common liability – and therefore the relevant amount to consider for purposes of determining the total amount of loss subject to equitable contribution – is between the insurers that are discharging common obligations to defend the insured. *See Cargill, Inc.*, 784 N.W.2d at 353. Accordingly, the Court concludes that Valspar's payment of $15,823.94 is not part of the total amount of defense costs for purposes of determining equitable contribution.

### D.     Valspar's Payment of $51,802.55

Valspar also argues that $51,802.55 it spent in defense costs on the underlying lawsuits, for which it apparently did not seek reimbursement from Continental, must be added to the total amount of defense costs and deducted from the fair share for which National Union is responsible. The Court's analysis from above largely applies with equal force to the $51,802.55 claimed by Valspar to be part of the total defense costs. But Valspar's argument with respect to this money also raises an additional wrinkle. In

the summary judgment order, the Court concluded that National Union had a duty to defend Valspar during the Program years, regardless of whether Valspar had an obligation under the Program to reimburse National Union or front money for the payment of those funds. *See, e.g.*, *Cont'l Cas. Co.*, 940 F. Supp. 2d at 920 ("Simply because National Union will ultimately be reimbursed for certain costs it expends in defending Valspar does not indicate that it does not have a duty to defend Valspar."). Valspar argues that because of this holding "defense payments made by Valspar or [a third-party administrator] also should be credited to National Union in any equitable contribution analysis." (Valspar's Supplemental Br. in Supp. of Amount of Contribution at 3 n.2.)

As explained above, payments made by an insured during a period of time in which the insured is being defended by an insurer are not included in an equitable contribution analysis, because an insured does not share common liability with its insurers. *Cf. Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 948 P.2d 909, 930 (Cal. 1997) ("Although insurers may be required to make an equitable contribution to defense costs **among themselves**, that is all: An insured is not required to make such a contribution **together with insurers**. Equitable contribution applies **only** between insurers and **only** in the absence of contract. It therefore has no place between insurer and insured, which have contracted the one with the other." (emphasis in original) (citations omitted)). Therefore, in order to demonstrate that the $51,802.55 belongs in the total amount of defense costs incurred by insurers with a duty to defend, Valspar must demonstrate that those payments are attributable to National Union's duty to defend that was triggered

under the Program years.  In other words, Valspar cannot simply incur any defense expenses it wishes to, and then after the fact claim that those expenses should be applied to National Union's obligation to contribute defense costs for the Program years.  Instead, Valspar must provide evidence that those payments were linked to the National Union Program years, for example, by showing that the payments were applied to the relevant deductibles under the Program years or were otherwise documented as being expenses paid pursuant to those years.  But Valspar has presented no evidence of any kind indicating such a connection.  Indeed, in opposing Continental's motion for summary judgment, Valspar specifically contended that "[m]ore importantly, in the four Suits actually at issue here, the evidence is undisputed that **neither Valspar nor National Union** . . . participated in the defense of those Suits **pursuant to the Program**." (Valspar's Mem. in Opp'n to Continental's Mot. for Summ. J. at 19-20, July 5, 2012, Docket No. 200 (emphasis added).)  Therefore, by Valspar's own admission there is no connection between the $51,802.55 and the National Union Program years.  Because the undisputed facts in the record show that the expenditures are not attributable to National Union – an entity that **does** share common liability with Continental – they are not properly considered as part of the equitable contribution analysis.  Therefore, the Court will not add the $51,802.55 to the total amount of defense costs for purposes of determining National Union's contribution share.

Accordingly, the Court finds that Continental is entitled to contribution based on defense expenses it incurred in the amount of $563,645.36.  National Union is liable for a

one-seventh share of those expenses, or $80,520.77, as well as interest recoverable thereon in an amount to be determined.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that pursuant to the issues raised in the parties' supplemental briefs, Continental's request for contribution from National Union in an amount of $80,520.77 plus interest recoverable thereon in an amount to be determined is **GRANTED**.

DATED:  September 12, 2014          _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                     United States District Judge